Matter of Shirreece AA. v Matthew BB. (2018 NY Slip Op 08215)





Matter of Shirreece AA. v Matthew BB.


2018 NY Slip Op 08215


Decided on November 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 29, 2018

525149

[*1]In the Matter of SHIRREECE AA., Appellant,
v
MATTHEW BB., Respondent.

Calendar Date: October 16, 2018

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Rumsey, JJ.


Noreen McCarthy, Keene Valley, for appellant.
Lisa A. Burgess, Indian Lake, for respondent.
Claudia A. Russell, Willsboro, attorney for the child.



MEMORANDUM AND ORDER
Clark, J.
Appeal from an order of the Family Court of Essex County (Meyer, J.), entered June 5, 2017, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a son (born in 2011). In or around July 2013, the parties ended their romantic relationship and, thereafter, informally agreed to share physical custody of their child on an alternating three-day schedule. Despite their differences and personal history, the parties were able to successfully navigate this informal 50/50 custody arrangement for several years. However, as the child began to approach school age in the spring of 2016, the parties — who lived roughly 35 miles apart — could not agree on whether the child should attend a prekindergarten program in the school district where the father lives or a head start program in the school district where the mother lives. In May 2016, the mother commenced this proceeding seeking sole legal and primary physical custody of the child based, in part, upon allegations that the father had a drug and alcohol problem and did not have steady employment or a driver's license. By amended petition filed in August 2016, the mother further alleged that the father had enrolled the child in prekindergarten in his school district without her consent. The mother therefore requested a temporary order granting her physical custody of the child and the right to make all educational decisions regarding the child. In answer to the mother's amended petition, the father acknowledged that he had enrolled the child in prekindergarten in his school district for the upcoming school year, opposed the temporary relief sought by the mother and requested sole legal and primary physical custody of the child.
On August 16, 2016, the parties appeared in Family Court for the first time. After a brief and incomplete inquiry into the status of the child's prekindergarten enrollment, the court indicated an intention to direct the child to attend prekindergarten full time in the father's school [*2]district. The mother's attorney objected, stating that there were not "enough facts put on the record to justify a decision at th[at] moment," and requested a brief adjournment to discuss the issue with opposing counsel. Family Court reluctantly agreed and adjourned the matter to August 29, 2016, stating that it would resolve the matter at that time. However, the August 29 appearance was ultimately adjourned, with no explanation included in the record for such adjournment. The parties did not appear in Family Court again until November 7, 2016. At that time, the father indicated that the child had been consistently attending prekindergarten in his school district during his parenting time, but not during the mother's parenting time, and he requested temporary physical custody of the child during the school week so that the child could attend prekindergarten full time. Despite the mother's objection and without taking testimony, Family Court issued a temporary order directing that the father have physical custody of the child from Sunday at 5:00 p.m. through Friday at 5:00 p.m. and that the mother have parenting time with the child every weekend.
In January 2017, Family Court conducted a fact-finding hearing, at which time the court heard testimony from the mother, the father and several other witnesses. At the close of the fact-finding hearing, Family Court permitted the parties to submit written summations, in which the attorney for the child echoed the position and relief sought by the father. Thereafter, in a decision and order entered in June 2017, Family Court awarded the parties joint legal custody of the child, with primary physical custody to the father and "reasonable and liberal" parenting time to the mother. Specifically, Family Court directed that — so long as the children of the mother's significant other were not present — the mother was to have parenting time with the child every other weekend, Wednesdays after school until 6:00 p.m., for two nonconsecutive weeks during the summer, certain holidays and such other times as the parties could agree. The mother appeals, primarily arguing that Family Court's determination is not supported by a sound and substantial basis in the record.
Where, as here, Family Court is presented with an initial custody determination, the paramount consideration is the best interests of the child (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Matter of Whetsell v Braden, 154 AD3d 1212, 1213 [2017]). In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being (see Matter of Joseph A. v Gina ZZ., 143 AD3d 1098, 1099 [2016]; Matter of Dupuis v Costello, 80 AD3d 806, 806 [2011]; Matter of Hissam v Mackin, 41 AD3d 955, 956 [2007], lv denied 9 NY3d 809 [2007]). Although we accord deference to Family Court's factual findings and credibility assessments, we will not uphold a best interests determination that does not have a sound and substantial basis in the record (see Matter of Paluba v Paluba, 152 AD3d 887, 889 [2017]; Matter of Joseph A. v Gina ZZ., 143 AD3d at 1099; Matter of Gast v Gast, 50 AD3d 1189, 1189-1190 [2008]).
We agree with the mother that Family Court's decision and order mischaracterizes and, at times, inaccurately reflects the record evidence and that, therefore, its determination lacks a sound and substantial basis in the record. We are initially troubled by the prejudicial position in which Family Court placed the mother in November 2016 when, without hearing any evidence, it issued the temporary order awarding the father physical custody of the child during the school week so that the child could attend the prekindergarten program in the father's school district full time. In so ordering, Family Court relied entirely on the fact that the mother had not been bringing the child to the prekindergarten program during her parenting time, without any consideration given to the fact that the mother was under no legal obligation to do so, that any expectation that the mother should do so arose out of the father's unilateral decision to enroll the child in his own school district or the impact that the 35-mile distance between the parties' homes [*3]may have had on the mother's ability to transport the child to and from school [FN1]. Family Court's initial decision regarding the child's education effectively rewarded the father for usurping all decision-making authority on this issue and placed the mother at a distinct disadvantage at the fact-finding stage. Indeed, in rendering its ultimate custody determination, Family Court faulted the mother for not taking the child to school and for not taking a more active role in the child's education. At no point did Family Court condemn or view unfavorably the father's usurpation of decision-making authority regarding the child's education. Quite the opposite — Family Court lauded the father for "initiat[ing] and pursu[ing] the child's education," while making no mention of the mother's testimony that she did not enroll the child in her school district because she and the father could not agree.
Additionally, the record evidence does not support Family Court's depiction of the mother as "a hands-off parent who appears to pay little attention to the child's needs when he is in her care" or its converse depiction of the father as a "devote[d]" parent with few, if any, flaws. Our review of the evidence reveals a more complicated picture than that portrayed by Family Court.
Turning first to the father, the record evidence, including the father's own admissions, completely contradicts Family Court's conclusion that there was no support for the mother's claim of substance abuse and domestic violence by the father. The evidence established that the father had five alcohol-related driving offenses spanning from 1998 to 2009 and that, as a result, his driver's license had been revoked [FN2]. Although Family Court acknowledged the father's history of substance abuse, it stated — in the face of contrary evidence — that the father's substance abuse predated his relationship with the mother. Testimony from both the mother and the father established otherwise. Initially, the mother and the father briefly testified about an occasion sometime after July 2013 when the mother smelled alcohol on the father during an exchange of the child. The mother also testified that, throughout her relationship with the father, she observed the father consume alcohol daily and recreationally take prescription pills. Further, there was extensive testimony from the mother, the father and the mother's aunt about an incident in 2012 when the father had gotten so intoxicated that he became violent with several people, including the mother and an intervening State Trooper. Family Court even discussed this incident in its decision and order, although that discussion is riddled with inaccuracies [FN3] and the court ultimately found the father's unacceptable behavior as having been brought about by the mother's alleged infidelity.
Family Court also discounted concerns regarding the father's substance abuse by stating that he had "successfully completed outpatient treatment." Although the father testified that he had participated in substance abuse treatment programs, he stated that he had last participated in a program in 2008 or 2009, and he did not provide any proof of his participation or completion of any of these programs. Moreover, evidence establishing the father's continued substance abuse after 2009 contradicted Family Court's finding that his participation in any such program had been successful.
Family Court's conclusion that there "was no credible evidence of domestic violence" by the father against the mother was also contradicted by the record. Although Family Court may have simply discredited the mother's testimony that the father was "controlling," the court also [*4]ignored testimony regarding the father's 2012 episode of binge drinking, during which the father was alleged to have thrown the mother out of their home while the child remained locked inside. The father did not deny the version of events presented by the mother and the mother's aunt, who witnessed part of the events. The father merely stated that he did not remember much of the night and that it was a "turning point" in his life. Rather than holding the father accountable for his actions during his 2012 drinking binge, the court blamed the father's drinking on the mother's alleged indiscretions. Family Court's handling of the foregoing unfavorable evidence for the father exemplified its consistent minimization and disregard of salient evidence regarding the father's fitness, without any consideration given to how such evidence may impact the best interests of the child.
In contrast, Family Court misconstrued, mischaracterized and otherwise amplified the evidence to portray the mother in the light least favorable. Initially, Family Court appeared to give undue consideration to the irrelevant allegation that the mother had been unfaithful to the father during their relationship. Additionally, it is clear from Family Court's statements that it simply did not like the mother's parenting style, which was more relaxed and less regimented than the father's parenting style. However, the mother's testimony demonstrated that, although she provided the child with more independence than the father, she had been providing for the child's needs. The evidence did not warrant Family Court's conclusions that the mother's "performance as a parent [was] lacking" or that she did not "provide[] any parental guidance to the child." In view of the foregoing, as well as other unsupported conclusions made by Family Court in its decision and order, we find that a sound and substantial basis does not exist in this record to support Family Court's determination to award the father primary physical custody of the child (see Matter of Varner v Glass, 130 AD3d 1215, 1216-1217 [2015]; compare Matter of Charles AA. v Annie BB., 157 AD3d 1037, 1039-1040 [2018]).
Moreover, even if Family Court's determination to award the father primary physical custody were supported by a sound and substantial basis, there was no basis for the severe reduction of the mother's overall time with the child, particularly since the parties had previously shared 50/50 custody of the child (see Matter of Rosenkrans v Rosenkrans, 154 AD3d 1123, 1126 [2017]; Matter of Laware v Baldwin, 42 AD3d 696, 697 [2007])[FN4]. Nor was there record support for the restriction that Family Court imposed on the mother's parenting time, which precluded the mother from having parenting time with the child when her boyfriend had parenting time with his children (see Matter of Christopher T. v Jessica U., 90 AD3d 1092, 1094 [2011]; Matter of Tamara FF. v John FF., 75 AD3d 688, 690 [2010]). Although the mother candidly testified that the child and her boyfriend's children engaged in sibling-like squabbles, she stated that she would intervene when she witnessed these verbal fights and that she had never observed any physical fighting between the children. Moreover, the restriction imposed by Family Court unnecessarily impedes upon the child's relationships with his half sibling, who lives with the mother and her boyfriend, as well as the mother's ability to see the child on holidays.
Accordingly, because a sound and substantial basis does not exist in the record to support Family Court's custody determination, we reverse Family Court's June 2017 order. Although our fact-finding authority is as broad as that of Family Court (see Matter of Kuklish v Delanoy, 155 AD3d 1376, 1379 [2017]; Matter of Gentile v Warner, 140 AD3d 1481, 1483 [2016]), given the passage of time since the fact-finding hearing, we remit the matter to Family Court for further updated fact-finding, if necessary, before a different judge and a custody determination that reflects the best interests of the child (see Matter of Rosenkrans v Rosenkrans, 154 AD3d at 1126; Matter of Rivera v Tomaino, 46 AD3d 1249, 1250 [2007]). Upon remittal, Family Court should consider assigning the mother new counsel, as our review of the record reveals that the mother's assigned counsel consistently failed to protect the mother's interests.
Garry, P.J., Egan Jr., Mulvey and Rumsey, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, matter remitted to the Family Court of Essex County for further proceedings not inconsistent with this Court's decision before a different judge, and, pending said proceedings, the terms of said order shall remain in effect on a temporary basis.



Footnotes

Footnote 1: In contrast, in fashioning the mother's parenting time in its ultimate custody determination, Family Court stated that the distance between the parties' homes made a midweek overnight with the child "impracticable."

Footnote 2: There was also evidence, including the father's own testimony, that he had previously driven without a valid driver's license and that he had done so on at least one occasion with the child in the car. Inexplicably, this evidence was not discussed by Family Court at all in its decision.

Footnote 3: Family Court incorrectly stated that this incident occurred in 2013 and that the mother had called her coworker for assistance, when in fact she had called her aunt. The court also conflated the 2012 incident with a separate argument occurring between the parties in 2013.

Footnote 4: Generally, where a trial court reduces a parent's school week parenting time, the court should endeavor to minimize that reduction by providing additional parenting time over holidays, school breaks and/or summer break (see Matter of Rosenkrans v Rosenkrans, 154 AD3d at 1126).